UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JALON R. HALL,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, et al.,<br><br>Defendants. | Case No. 23-cv-06574-JST<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO STRIKE**<br><br>Re: ECF Nos. 127, 135, 136 |

Before the Court is Defendants' Google LLC and Jamila Smith-Loud's motion for summary judgment; Plaintiff's Jalon Hall's motion for partial summary judgment; and Google's motion to strike. ECF Nos. 127, 135, 136. The Court will grant Google's motion for summary judgment, deny Hall's motion for partial summary judgment, and partially grant Google's motion to strike.

## I.    BACKGROUND

Hall was hired by Google in October 2020 as a content moderation specialist. ECF No.127-1 ("Hall Dep.") at 66:13–22. Hall is African American, has a hearing disability, and communicates using American Sign Language. ECF No. 137-7 ("Hall Decl.") at ¶ 2. As a content moderator specialist, Hall reviewed video content on YouTube to ensure compliance with YouTube's policies. Hall Dep. at 180:8–9. Hall sought accommodations for her disability, including an interpreter. Hall Decl. ¶ 5. Hall was hired as a "Level 2" or "L2" employee and began on the Child Safety Team, which required employees to work in person due to the sensitive nature of the job. *Id*. at 179:24–180:9, 99:6–8. As Hall was unable to access an interpreter mid-training due to COVID-19 quarantine, she was moved into the misinformation department where remote work was allowed, and an interpreter could be accessed. *Id*. at 158:18–159:12, 188-12–

United States District Court
Northern District of California

189:9.  When training ended, Hall could no longer access an in-room interpreter as Google claimed there were confidentiality and security concerns.  *Id*. at 159:23–160:7, 164:4–13.  Hall complained about interpreter access several times and complained that the captioning tool Google provided was inadequate.  Hall Decl. ¶¶ 11, 21.  Hall then requested to return to Child Safety as she believed she could evaluate the videos better with just visual cues there.  Hall Dep. at 161:6–14.  In her role, Hall had access to an interpreter in the building, but not in the secure investigation room where she worked (*id*. at 163:3–5, 164:3–5), additional monitors for ASL interpretation (*id*. at 318:1–9), a specific type of headphones recommended by Hall's audiologist (ECF No. 127-8 ¶ 11), clear face masks for her interpreters and peers (Hall Dep. at 185:18–22), access to African American ASL interpreters (*id*. at 183:3–20), closed captioning for video review (ECF No. 127-8 ¶ 11), a reduced quota of videos she needed to complete per day (*Id*.), intermittent schedule flexibility, and permission to bring a hearing dog to work (Hall Dep. at 171:9–22).  Hall received positive reviews in her role as a content moderator.  ECF No.127-9 ¶ 4.

In March 2022, Hall sought a transfer from her content moderation role and spoke to Google's Human Resources department about different opportunities.  *Id*. ¶ 5; ECF No. 127-7 ¶ 5.  Hall was offered a position as a Research Analyst under Jamila Smith-Loud in a department supervised by Marian Croak.  As a part of her orientation, Hall was initially invited to meetings of the Equitable AI Resource Roundtable, but eventually she was "uninvited to attend these meetings."  ECF No.132-2 at 135; ECF No. 127-2 ¶ 11.  Hall had access to two interpreters at all times during her tenure as a Research Analyst.  Hall Dep. at 215:3–5, 216:24–217:2; ECF No. 126-5 ¶ 12.  Hall experienced substantial conflicts with Smith-Loud and repeatedly submitted complaints to Google about her experiences with Smith-Loud.  ECF No. 132-2 at 76–78.  After Hall's complaints, Google assigned a member of Google's Human Resources department to facilitate meetings between her and Smith-Loud.  ECF No. 132-2 at 78–79; Hall Dep. at 222:23–223:5.  On December 21, 2023, Hall filed this case *in pro per* asserting disability and race discrimination and failure to accommodate her disability.  ECF No. 1.

Hall continued to be employed with Google through December 2024.  Prior to her termination, Smith-Loud continued to express concerns that Hall was "not meeting the

expectations and the demands of an Analysts L2" and documented various deficiencies in Hall's work. ECF No 127-1 at 66–68; ECF No. 127-2 ¶¶ 27, 44, 49; ECF No. 127-3 ¶¶ 9–14. After several months of documented deficiencies, and weekly meetings with Hall, Smith-Loud communicated with her managers, Saška Mojsilović and Marian Croak that Hall's employment needed to be terminated. ECF No. 127-2 ¶¶ 49–50; ECF No. 127-4 ¶ 14. Mojsilović and Croak subsequently approved Smith-Loud's request, and Hall was terminated on December 16, 2024. ECF No. 127-2 at 89–90; ECF No. 127-3 ¶ 15; ECF No. 127-3 ¶ 15.

Counsel appeared on Hall's behalf on April 24, 2024. ECF Nos. 31, 32, 33. Hall filed her first amended complaint on August 26, 2024. ECF No. 49. Hall filed a second amended complaint on February 28, 2025. ECF No. 77. On March 27, 2025, Defendants moved to strike Hall's second amended complaint because she had filed it without obtaining leave of court or Google's consent in violation of Rule 15.[1] ECF No. 81. On June 2, 2025, the Court granted Defendants' motion to strike. ECF No. 96. On June 9, 2025, Hall filed a motion for leave to file a second amended complaint, which the Court granted on July 16, 2025. ECF No. 116. That complaint asserts claims for disability discrimination pursuant to Cal. Gov't Code § 12940(a); failure to accommodate in violation of Cal. Gov't Code § 12940(m)(1); failure to engage in interactive process, in violation of Cal. Gov't Code § 12940(n); harassment in violation of Cal. Gov't Code § 12940(j)(1); disability discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act; race discrimination in violation of Cal. Gov't Code § 12940(a); retaliation in violation of Cal. Gov't Code § 12940(h), (m)(2); failure to prevent discrimination, harassment, and retaliation in violation of Cal. Gov't Code § 12940(k); and race discrimination, harassment, and retaliation in violation of 42 U.S.C. § 1981.

On July 30, 2025, the parties filed a stipulated proposed briefing schedule for cross-motions for summary judgment in which Hall waived her right to reply to Google's motion, ECF No. 121, which the Court granted on August 6, 2025, ECF No. 124. Google filed its motion for summary judgment on August 12, 2025. ECF No. 127. Hall filed her cross-motion for partial

---

[1] All references to "rules" are to the Federal Rules of Civil Procedure unless stated otherwise.

summary judgment and opposition to Google's motion on September 4, 2025. ECF No. 135. Google filed a motion to strike several declarations and Hall's evidentiary objection on September 15, 2025, and its reply to the summary judgment motion and opposition to Hall's motion on September 16, 2025. ECF No. 136, 137. Hall filed a motion for leave to file a reply in contravention to her stipulation on September 25, 2025, which the Court denied on October 14, 2025. ECF Nos. 138, 142.

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## III.    LEGAL STANDARD

### A.    Motion to Strike

Pursuant to Rule 12(f), a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

Rule 12(f) Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delay tactic. *See California Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). Motions to strike are "generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Rosales v. Citibank, Federal Sav. Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike. *See In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

### B.    Motion for Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the

4

case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the court must draw "all justifiable inferences" in the nonmoving party's favor and may not weigh evidence or make credibility determinations. *Id.* at 255.

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. *Id.* at 1103. It is not the court's duty "to scour the record in search of a genuine issue of triable fact"; instead, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). If the nonmoving party fails to make the required showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## IV.    DISCUSSION

### A.    Motion to Strike

The Court first considers Google's motion to strike the declarations of Stephanie Parker, Imani Hayden, and John Olson. ECF No. 136.[2] Google argues that Hall did not previously disclose these witnesses as required by Rules 26(a) and 26(e). ECF No. 136 at 3. She did not include their names in her initial disclosures filed in July 2024 or ever supplement her disclosures

---

[2] Although Civil Local Rule 7-3(a) requires all evidentiary and procedural objections to a motion to be contained within the opposition brief, Civil Local Rule 7-8 requires any motions for sanctions to be filed separately. Because Google's motion seeks exclusions as a sanction under Rule 37, it was properly filed as a separate motion. *See Apple iPod iTunes Antitrust Litig.*, No. 05-cv-0037-YGR, 2014 WL 4809288, at *1 n.1 (N.D. Cal. Sept. 26, 2014); *In re Twitter Inc. Sec. Litig.*, No. 16-cv-05314-JST, 2020 WL 485547, at *1 n.2 (N.D. Cal. Jan. 30, 2020).

to include them.  ECF No. 136 at 4.  Hall only identified Parker, Hayden, and Olson in interrogatory responses seeking the identify of persons who might have information about the case.  *Id*.  Google argues that the failure to disclose was neither substantially justified nor harmless.  *Id*. at 5 (citing Fed. R. Civ. P. 37(c)(1)).

Hall responds that there is no obligation to supplement Rule 26 disclosures when the relevant information is otherwise made known to the opposing party.   ECF No. 139 at 4.  Hall asserts that the disclosure of the witnesses in interrogatory responses and a short discussion of Parker in Hall's deposition satisfied her obligation of disclosure under Rules 26(a) and (e).  *Id*. at 5.  She further argues that there was no surprise or prejudice to Google and no bad faith on Hall's part.  *Id*. at 6.

Rule 26(a)(1)(A)(i) requires parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses."  The duty to disclose is ongoing, and parties must supplement this disclosure as new information becomes available.  Fed. R. Civ. P. 26(e).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Rule 37(c)(1) "gives teeth" to Rule 26's requirements and imposes mandatory exclusion of any undisclosed information unless there is a substantial justification, or the non-disclosure was harmless.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *In re Twitter Inc. Sec Litig*. 2020 WL 485547, at *2 (N.D. Cal. Jan 30, 2020).  The witness disclosures mandated by the Federal Rules of Civil Procedure are designed "to encourage parties to try cases on the merits, not by surprise, and not by ambush."  *Ollier v. Sweetwater Union High Sc. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014).  District courts have particularly wide discretion in excluding witnesses under Rule 37(c)(1).  *Ollier*, 768 F.3d at 862.  "The Ninth Circuit has stated that Rule 37(c)(1) sanctions are self-executing and automatic unless the non-disclosing party shows that its failure to disclose was substantially justified or harmless."  *Medina v. Multaler, Inc.*, 547 F. Supp. 2d 1099, 1106 (C.D.

United States District Court
Northern District of California

United States District Court
Northern District of California

Cal. 2007) (citation modified).

The Court finds that the Hayden and Olson declarations must be excluded. The Ninth Circuit has held that merely mentioning a witness's name in an interrogatory response is "insufficient." *Benjamin v. B & H Educ., Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017). Nor does mention of a witness's name at deposition suffice. *McIntire v. Hous. Auth. of Snohomish Cnty.*, 731 F. Supp. 3d 1212, 1221 (W.D. Wash. 2024) ("Courts have found that 'the mere mention of a name in a deposition or interrogatory response is insufficient to satisfy Rule 26(a)(1)(A)(i).'") (quoting *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 72 (E.D.N.Y. 2012)); *Amador v. Bully's Sports Bar & Grill*, No. 3:15–CV–0022–HDM (VPC), 2017 WL 627214, at *5 (D. Nev. Feb. 15, 2017) (same). Hall is correct that a formal disclosure is unnecessary when the information has "otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). "Whether sufficient notice of a potential witness has been provided during discovery to negate any duty for a formal disclosure is an issue resolved based on the specific circumstances of each case." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 615, 618 (D. Nev. 2020). The mention of a witness's name in an interrogatory response or deposition by itself, however, is insufficient to meet this standard.

The authority Hall cites does not change this outcome. In *V5 Techs. v. Switch Ltd.*, for example, plaintiff produced documents identifying the witness in question; a key report the witness's testimony would focus on, his name, and his role in that report were disclosed in eight separate depositions. 334 F.R.D. at 618–19. Finally, "[d]efense counsel himself posed deposition questions about" the witness. *Id.* at 619. The court therefore applied the principle that "[c]ourts are particularly disinclined to find a disclosure violation when the party seeking sanctions itself previously exposed its own knowledge of the information omitted from formal disclosures" and denied a motion to exclude. *Id.* As to Hayden and Olson, no similar facts are present here.

Hall also cites *Russell v. GC Servs. Ltd. P'ship*, 476 F. Supp. 3d 1097 (E.D. Wash. 2020), asserting that the court found "that a party's mention of a witness during a deposition satisfied Rule 26(e) where the additional information had been made known to the opposing party during the discovery process." ECF No. 139 at 5. Hall misstates *Russell*'s holding. In fact, the court

7

there found that although plaintiff had mentioned during this deposition that his wife was knowledgeable about his case, but not stated that she knew about his emotional distress damages, he had not satisfied his obligation to supplement his disclosures.  476 F. Supp. 3d at 1101.

The facts are different as to Parker.  Google's counsel asked in-depth questions regarding Parker in Hall's deposition.  ECF No. 139-1 at 270:19–274:4.  The questions to Hall not only touched on Parker's knowledge of the facts of the case, but also where she currently lives, suggesting that Google intended to follow up regarding her knowledge of the facts of this case.  *Id.* at 273:12–13.  Regarding Parker, the facts more closely resemble those in *V5 Technologies*.  The Court finds that Hall's disclosure of Parker was adequate.

As to Hayden and Olson, the Court next considers whether the violation was harmless or substantially justified.  Fed. R. Civ. P. 37(e).  Here, Hall repeats her arguments that the witnesses were identified either through interrogatories or through deposition testimony, suggesting that the failure to disclose was harmless.  For the reasons already given, the Court rejects these arguments.  Hall offers no substantial justification for the failure, and the Court finds that Google was prejudiced.  Plaintiff's failure to disclose Hayden and Olson as likely witnesses "before . . . [Plaintiff's] summary judgment motion was filed prejudiced [Google] by depriving [it] of an opportunity to depose [them]." *In re Twitter Inc. Sec. Litig.*, No. 16-CV-05314-JST, 2020 WL 485547, at *3 (N.D. Cal. Jan. 30, 2020) (quotation and citation omitted).  The Hayden and Olson declarations are therefore stricken.  *See Schedler v. Fieldturf USA, Inc.* No. 3:16-cv-0344-JR, 2018 WL 5083883, at *2 (N.D. Cal. Oct. 18, 2018) (The Rule 37(c)(1) "sanction is self-executing and automatic. . .The only exceptions to [its] exclusion sanction apply if the failure to disclose is substantially justified or harmless.") (internal quotation marks and citations omitted).

### B.    Evidentiary Objections

Next, the Court considers the evidentiary objections filed by both parties.  Civil Local Rule 7-3 permits requires that any evidentiary and procedural objections to an opposing party's motion be contained within the opposing brief or memorandum.  Civ. L. R. 7-3.  Google complied with this rule by filing its evidentiary objections as a part of its motion for summary judgment; Hall filed her evidentiary objections as a stand-alone 20-page document attached to her brief.  ECF No.

135-1.  Because Hall's separately filed evidentiary objections do not comply with Rule 7-3, the Court overrules the objections.  *See Coleman v. Kaiser Permanente¸* 2014 WL 2886293, at *3 (N.D. Cal. Jun. 25, 2014) ("Because Plaintiff filed the objections at issue apart from her opposition briefs in violation of Civil Local Rule 7–3, Defendants' motion to strike is GRANTED.").

In its objections, Google moves to exclude several of the documents submitted by Hall with her motion.  ECF No. 137 at 23.  Google argues that most of her exhibits lack Bates numbers, which makes it unclear whether the documents were ever produced.  *Id.*  It cites no authority for the proposition that documents lacking Bates numbers should be excluded.  Moreover, while Google argues that "[t]he Court should preclude Hall from relying on any evidence not produced before the close [of] discovery," *id.* at 23, it never states that the documents were not, in fact, produced, or even that it was unable to tell if they were produced.  This portion of Google's motion is denied.

Google also moves to strike Hall's declaration on the ground that it is "directly contradicted by the record."  *Id.*  As an example, Google cites a passage from the declaration in which Hall declares that "[i]nterpreter access was also drastically reduced in my new role [as a Research Analyst]," *id.* at 24, compared with deposition testimony in which she stated that when she was a Research Analyst, an interpreter was always available when she needed one, ECF No. 126-4 at 253:25–254:3.  Google also compares a statement where Hall says she was unable to meet her quotas as a content moderator specialist, Hall Decl. ¶ 25, with Hall's deposition testimony that she was able to do her job as a content moderator specialist and no one said she was not reviewing enough videos, Hall Dep. at 166:11–25.  Google seeks to strike these as "sham" facts.  *Id.* (citing *Hennighan v. Insphere Ins. Sols., Inc.,* 38 F. Supp. 3d 1083, 1096 (N.D. Cal. 2014)).

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir.1991).  "The sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit

contradicting his own prior testimony,' which 'would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Kennedy,* 952 F.2d at 266). The Ninth Circuit has clarified, however, that the rule "should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." *Yaeger*, 693 F.3d at 1080 (quotations omitted). Accordingly, there are "two important limitations on a district court's discretion to invoke the sham affidavit rule." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). First, "the rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony; rather, the district court must make a factual determination that the contradiction was actually a sham." *Id.* (citation modified). Second, "our cases have emphasized that the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* at 999.

It does not appear to the Court that the statements in Hall's declaration clearly and unambiguously contradict her deposition testimony. For example, it can be true that access to interpreters was reduced, but also true that Hall had access to an interpreter when she needed one. The Court reaches a similar conclusion to the other examples in Google's motion. Accordingly, this portion of Google's motion is also denied.

### C.    Motion for Summary Judgment

Hall asserts eleven claims against Google for discrimination, failure to accommodate, and adverse employment actions. Google moves for summary judgment on all claims, and Hall moves for partial summary judgment on her failure to accommodate and discrimination claims. The Court examines each claim in turn.

#### 1.    Time-Barred Claims

Google contends that many of Hall's claims are time-barred due to her failure to file a complaint with the EEOC or state agencies within the statutory period. "An employee has 180 days from the date of the Title VII violation to file an administrative complaint with the Equal Employment Opportunity Commission ("EEOC"), or 300 days from the date of the Title VII

violation to file with a state or local agency that has the authority to grant relief on the Title VII claims." *Wilson v. City of Fresno*, 763 F. Supp. 3d 1073, 1092 (E.D. Cal. 2025) (citing 42 U.S.C. § 2000e-5(e)(1)).  Under FEHA, the complainant must file an administrative charge with DFEH within three years after the alleged unlawful conduct occurred.  Cal. Gov't Code § 12960.  "[I]n the context of the FEHA, exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts[.]" *Okoli v. Lockheed Tech. Operations Co.*, 36 Cal. App. 4th 1607, 1613 (1995).

Google first seeks to dismiss as time-barred the ADA claims premised on events that occurred prior to February 13, 2022 and the FEHA claims premised on events that occurred prior to June 11, 2021.  ECF No. 127 at 19.  Google contends that these claims must be excluded because Hall did not file her EEOC charge until December 13, 2022 and did not file an administrative charge with the California Civil Rights Division ("CRD") until June 11, 2024.  *Id*. Hall responds that Google miscalculates the statute of limitations because FEHA claims are tolled during EEOC investigations.  ECF No. 135 at 15.  Hall further argues that the statute of limitations runs from her October 10, 2022 EEOC inquiry, not her December 12, 2022 formal charge.  *Id*. at 15–16.  Google responds that Hall conflates the statute of limitations that applies after receiving a right-to-sue letter—which tolls the time within which a plaintiff must file a lawsuit—with the time after the discriminatory conduct within which an employee must file an inquiry with the EEOC. ECF No. 137 at 6.  Google argues that even if the Court construes Hall's inquiry—which has never been produced in the litigation and is not attached to Hall's papers—as a charge filed on October 10, 2022, this would still exclude claims prior to December 26, 2021.  *Id*.

Google is correct that Hall conflates the distinction between the time within which Hall must have filed a charge with the EEOC alleging an ADA violation, and the tolling of the time to file a lawsuit while an EEOC investigation is ongoing.  ECF No. 137 at 6 (citing *Salgado v. Atl. Richfied Co.*, 823 F. 2d 1322, 1324 (9th Cir. 1987)).  Any ADA claims involving events that occurred more than 300 days prior to the filing of the charge must be excluded.

Parties also dispute the relevant date that Hall filed a charge with the EEOC.  Google notes that the EEOC charge only regarding Title VII and ADA claims was filed on December 13, 2022

such that claims from events that predate February 13, 2022 must be time-barred.  ECF No. 127 at 20; ECF No. 127-1 at 75–77.  In response, Hall claims that her intake questionnaire constitutes a charge as it provides information required by regulations and can be reasonably construed as a request for the agency to take remedial action.  ECF No. 135 at 15–16 (citing *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)).  Hall references an October 10, 2022 inquiry as having been sufficient to constitute a charge.  ECF No. 135 at 15–16.  An earlier portion of Hall's brief references a different "charge" date of October 10, 2022 and cites to Exhibit 17.  *Id*. at 11.  The cited document is a screenshot of a list of "inquiries/charges/cases" which references an October 10, 2022 filing and a record of a December 6, 2022 intake interview conducted in relation to the October 10, 2022 filing.  ECF No. 135-2 at 109–113.  Google claims that the October 10, 2022 inquiry was "undisclosed and unproduced," and Hall provides no documentation for what the October 10 filing contained.  ECF No. 137.

A document filed with the EEOC satisfies the charge requirement if it "contains an allegation and the name of the charged party" and can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."  *Holowecki*, 552 U.S. at 401–02.  "The *Holowecki* Court explained that documents filed by employees with the EEOC 'should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies.'"  *Stewart v. SEIU United Healthcare Workers-W.*, No. C 11-04438 JSW, 2012 WL 1357633, at *2 (N.D. Cal. Apr. 17, 2012) (citing *Holowecki* at 406).  Here, however, Hall does not provide the intake form itself and so the Court cannot ascertain what information was provided to the EEOC.  In the absence of that information, the Court will measure the statute of limitations for Hall's ADA claims against the EEOC charge date of December 13, 2022.  Accordingly, Hall's ADA claims premised on conduct prior to February 13, 2022, including all ADA and § 1981 claims regarding conduct that preceded Hall's role as a Research Analyst L2, are time-barred.

The time to file FEHA claims extends to three years following the unlawful conduct.  Cal. Gov't Code § 12960.  Hall filed her FEHA claims with the CRD on June 11, 2024.  ECF No. 127-

1 at 89–91. Therefore, Hall's FEHA claims prior to June 11, 2021 are also time-barred. As a result, nearly all of Hall's claims of discrimination during hiring, training, and in her role as a content moderator specialist are excluded.

### 2. Claim 1 and Claim 5: Disability Discrimination Under Cal. Gov't Code § 12940(a) and 42 U.S.C. § 12101

Google and Hall each move for summary judgment on Hall's disability discrimination and failure to accommodate claims under the ADA and California's Fair Employment and Housing Act (FEHA). ECF No. 118 ¶¶ 34–58, 84–99.

"Because of the similarity between state and federal employment discrimination laws," in evaluating discrimination claims under FEHA, "California courts look to pertinent federal precedent when applying [California] statutes." *Guz v. Bechtel Nat., Inc.*, 24 Cal.4th 317, 354 (2000). The Court therefore analyzes Hall's disability discrimination claims together except as they relate to events between June 11, 2021 and February 12, 2022, which the Court will consider only with regard to Hall's FEHA claims. *See Matthews v. Amtrak Nat'l R.R. Passenger Corp.*, 402 F. Supp. 3d 930, 943 (E.D. Cal. 2019).

FEHA "prohibits employment discrimination on the basis of, among other things, physical disability and medical condition." *Gardner v. Fed. Express Corp.*, 114 F. Supp. 3d 889, 896 (N.D. Cal. 2015) (citing Cal. Gov't Code § 12940(a)). To establish a prima facie case of disability discrimination, a plaintiff must establish that (1) she suffered from a disability; (2) she could perform the essential duties of the job with or without reasonable accommodations, meaning that she was a "qualified individual"; and (3) she was subjected to an adverse employment action because of her disability. *See Green v. California*, 42 Cal. 4th 254, 262 (2007); *Brundage v. Hahn*, 57 Cal. App. 4th 228, 236 (1997). "California relies on ADA precedents to interpret analogous provisions of the state's Fair Employment and Housing Act." *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 n.1 (9th Cir. 2003) (citing Cal. Gov't Code § 12940; *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 271 (9th Cir. 1996)).

In general, disability discrimination claims are subject to the three-part test for federal discrimination claims set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and

adopted by the California Supreme Court in the FEHA disability discrimination context in *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 354 (2000).  Under that test:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination.  Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981) (citing and quoting *McDonnell Douglas*, 411 U.S. at 802, 804).  The *McDonnell Douglas* test "reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially."  *Id.* at 354.  If the plaintiff can establish direct evidence of discrimination, however, courts do not apply the *McDonnell Douglas* test.  *See Trop v. Sony Pictures Entertainment, Inc.* 129 Cal. App. 4th 1133, 1144 (2005); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

Hall first argues that there is no need to apply the burden shifting test because she has direct evidence of discrimination.  Direct evidence of discriminatory intent consists of "evidence which, if believed, proves the fact [of discriminatory animus] *without inference or presumption*."  *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 662 (9th Cir. 2002) (alteration and emphasis in original) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)).  "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer."  *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005).

Hall contends that three incidents provide direct evidence of discrimination: (1) a colleague's offensive remarks about her race and disability and the "brushing off" of her complaint by Google; (2) Smith-Loud's interruptions, dismissal of "external praise and contributions," "rebuffing Hall's concerns of bias" and seeking to edit Hall's meeting agendas; and (3) "exclusions from meetings and communications" which Hall discovered through internal messages sent in error to her.  *Id*. at 22–23.  However, none of these events constitute "direct

14

evidence" "which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1221 (9th Cir.1998) (quoting *Davis v. Chevron, U.S.A., Inc.,* 14 F.3d 1082, 1085 (5th Cir.1994)) (alteration in original).

"Comments demonstrating discriminatory animus may be found to be direct evidence if there is evidence of a causal relationship between the comments and the adverse job action at issue." *DeJung v. Superior Ct.*, 169 Cal. App. 4th 533, 550, 111 (2008). The only comment reflecting any discriminatory animus was made by a colleague in 2021 who did not work with Hall or have any responsibility regarding her employment or accommodations. ECF No. 135-7 ¶ 26; Hall Dep. at 28:24–29:24; 30:5–7; 114:4–7; 117:4–5. The comment included the remarks that Hall was "lucky to be at Google" and that other Black Deaf individuals depend on government checks. ECF No. 135-7 ¶ 26. The comment was inarguably racist, but Hall "does not link any comment with the decision-making process that resulted in [her] termination" or the other discriminatory conduct she alleges. *White v. Home Depot U.S.A. Inc.*, No. 17-CV-00752-BAS-AGS, 2019 WL 1171163, at *8 (S.D. Cal. Mar. 13, 2019), *aff'd sub nom. White v. Home Depot USA, Inc.*, 832 F. App'x 471 (9th Cir. 2020).

Accordingly, the court utilizes the *McDonnell Douglas* framework in determining whether summary judgment is appropriate.

### a.   Prima Facie Case of Discrimination

To establish a prima facie case of disability discrimination, the plaintiff must prove: (1) a disability, (2) the ability to perform the essential functions of her job, and (3) that she was subject to an adverse employment action. *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 254 (2000). Hall suggests that "Google repeatedly undermined her ability to succeed" by failing to accommodate her disability which led her to suffer adverse employment consequences. ECF No. 135 at 22–23. The parties do not dispute that Hall is a disabled individual within the definition of the ADA or the FEHA, and that Hall was qualified for her roles at Google. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 660 (9th Cir. 2002), *as amended* (July 18, 2002). The parties dispute only the third prong—whether Hall was subject to an adverse employment action.

In the context of discrimination, an adverse employment action is one that "materially

affect[s] the compensation, terms, conditions, or privileges of . . . employment." *Blount v. Morgan Stanley Smith Barney LLC*, 982 F. Supp. 2d 1077, 1082 (N.D. Cal. 2013), *aff'd*, 624 F. App'x 965 (9th Cir. 2015) (citing *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1126 (9th Cir.2000)).  Examples of adverse employment actions include assignment of more or more burdensome work responsibilities, exclusion from an important area of the workplace, discriminatory allocation of hazardous work assignments among other actions.  *Blount*, 982 F. Supp. 2d. at 1082 (collecting cases).

Examples of adverse employment actions include "[t]ransfers of job duties and undeserved performance ratings," "exclusion from meetings, seminars and positions that would have made the employee eligible for salary increases; denial of secretarial support; and a more burdensome work schedule," *Stewart v. Potter*, No. C-04-2659 MEJ, 2005 WL 8162750, at *5 (N.D. Cal. Dec. 8, 2005), and failure to promote, *Herrera v. Ticor Title Agency of Arizona, Inc.*, No. CV 05-42 TUC JMR, 2006 WL 8440278, at *4 n.2 (D. Ariz. Sept. 19, 2006).  "The definition of adverse employment action does not extend, however, to rude or offensive comments or mere ostracism." *Id.* (citing *Kortan v. Cal. Youth Auth.,* 217 F.3d 1104, 1112–13 (9th Cir. 2000)).

Hall alleges nine adverse employment actions: (1) "initial under-placement at a level below her qualifications"; (2) "providing lesser, abbreviated training (due to 3 back-to-back transfers before "live production" began)"; (3) "reassignment to a newly-created, isolated, dead-end 'Research Analyst L2'"; (4) "denial of promotion and advancement opportunities, despite consistently receiving positive performance in her CMS role"; (5) "repeated denials or restriction of interpreter access"; (6) "exclusion from team meetings"; (7) "withholding of approved accommodations, e.g., manager recaps, contributing to poor evaluations"; (8) "negative performance evaluations"; and (9) "termination following repeated complaints of discrimination through every channel available to her."  ECF No. 135 at 22–23.[3]

As a preliminary matter, Google contends that Hall's termination cannot be considered an

---

[3] For the ADA claims, alleged adverse employment actions 1–3 are barred because they occurred prior to February 13, 2022; for the FEHA claims, alleged adverse employment actions 1 and 2 occurred prior to the relevant time bar of June 11, 2021.

16

adverse employment action in support of her discrimination claims, because she stipulated that she included that allegation in her second amended complaint only to support her retaliation claims. ECF No. 137 at 16 n.5 (citing ECF Nos. 100, 116); ECF No. 100 at 2 (acknowledging that Hall was amending her complaint "solely to include[e] her termination as an additional adverse action in support of her existing retaliation claim").

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). "Its purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Reed v. Ohio Sav. Bank*, No. CV166610PSGJEMX, 2016 WL 7117242, at *5 (C.D. Cal. Dec. 6, 2016) (citation omitted), *aff'd*, 715 F. App'x 769 (9th Cir. 2018). The Court finds that Hall is judicially estopped from relying on her termination as evidence of an adverse employment action for any claim other than her retaliation claim.

The third adverse action, which the Court considers only for the purposes of the FEHA discrimination claim, was Hall's transfer from her role in content moderation to her research analyst role in July 2021. ECF No. 135 at 22. "Where a transfer is '*purely* lateral[,]' that is, where there is "no change in title, rank, wages, or benefits of employment[,]" it is not an adverse employment action." *Knox v. Contra Costa Cnty.*, No. 20-CV-01449-JCS, 2022 WL 2290686, at *15 (N.D. Cal. June 24, 2022) (emphasis in original) (quoting *Posin v. Cnty. of Orange*, No. SACV150120AGJCGX, 2016 WL 5858706, at *5 (C.D. Cal. Jan. 18, 2016)." "On the other hand, '[a] transfer can be an adverse employment action when it results in substantial and tangible harm.' *Id.* (quoting *Posin*, 2016 WL 5858706, at *5).

Hall's transfer cannot constitute an adverse employment action because she sought out and initiated the transfer. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (citing *B. Schlei & P. Grossman, Employment Discrimination Law* 554 (2d ed. 1983)); *see* ECF No. 135-2 at 410 (Hall stating that "In March 2021 and April 2021, I contacted People Operations (HR) and the Disability Alliance to inquire about switching to another role due to my disability, and the terrible

17

experience of inequity in the Content Moderation Specialist (CMS) role" and that she thereafter "started the role as a Research Analyst" "[o]n July 26, 2021"). Moreover, even if Google had imposed the transfer on Hall, she identifies no diminution in pay or benefits or any other "materially adverse consequence" associated with the reassignment. *See generally* ECF No. 135; *Knox*, 2022 WL 2290686, at \*15. Hall has not met her burden of establishing a *prima facie* case that this was an adverse consequence.

Hall's fourth alleged adverse employment action claim is that she was denied promotions and advancement despite receiving positive performance evaluations in her CMS roles. ECF No. 135 at 22. Google argues that Hall neither applied for nor qualified for a promotion. ECF No. 137 at 16; ECF No. 126-5 338:21–340:4; ECF No. 127-2 ¶¶ 41–42; ECF No. 127-5 ¶¶ 10–11. "In the context of Title VII, a 'failure to promote is a classic example of an adverse employment action.'" *Knox*, 2022 WL 2290686, at \*17 (quoting *Hardin v. Wal-Mart Stores, Inc.*, 604 F. App'x 545, 547 (9th Cir. 2015)). Google argues that someone who does not apply for a promotion cannot allege that the failure to promote was an adverse employment action, but the law is otherwise. "[A] plaintiff can make a prima facie case of discrimination based on failure to promote even where she did not apply for a position where an employer does not use formal procedures for posting or accepting applications for a promotion opportunity or for determining who will be offered the position." *Id.* (citing *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir.1984)). A plaintiff makes out a prima facie case of discrimination when he can establish that the company had some reason or duty to consider them for the promotion. *Id.*, at \*18 (citing *Carmichael,* 738 F.2d at 1133-34).

Hall has met this burden. She made her interest in being promoted clear, Hall Dep. at 276:13–16, and there is evidence that she was not promoted when most people at her level at Google were promoted within three years. ECF No. 135-2 at 269 (stating that "internal leveling data and historical internal leveling data suggests that the majority of L2 Googlers were promoted to L3 within 3 years. Jalon has been at Google for over 3 years."). Further, Hall testified that the reason she did not apply for a promotion was because her supervisor in her research role, Smith-Loud, had not offered her support, which was necessary for a promotion. Hall Dep. at 339:12–

340:4.  The Court finds that Hall has established that Google had the reason of her tenure to consider promoting her and did not do so.  Therefore, the Court finds that Hall has established a prima facie case that Google's failure to promote Hall while in her research analyst role was an adverse employment action.

The fifth and seventh adverse actions that Hall alleges involve failures to accommodate or "repeated denials or restriction of interpreter access."  ECF No. 135 at 22–23.  These are not adverse employment actions for the purpose of disability discrimination under California law; these are more properly addressed through a failure to accommodate claim under FEHA.  *See Doe v. Dep't of Corrs. & Rehab.*, 43 Cal. App. 5th 721, 736 (Ct. App. 2019) ("[A] failure to reasonably accommodate an employee's disability—which is a separate cause of action under FEHA []— can[not] qualify as the adverse action underlying a discrimination or retaliation claim.").  Courts in the Ninth Circuit have similarly found that a failure to accommodate cannot serve as an adverse employment action for the purposes of an ADA disability discrimination claim.  As a court said in *Mvuemba v. Cnty. of Los Angeles*

> A failure to accommodate is a separate cause of action under the ADA, and cannot serve as an adverse employment action for purposes of [ADA discrimination]. Since the Ninth Circuit includes an adverse employment action as an element of a prima facie failure-to-accommodate claim, it is therefore illogical to then conclude that an employer's failure to accommodate is an adverse employment action. This would make the cause of action an element of itself."

No. 214CV01126ODWPLAX, 2014 WL 12694560, at *10 (C.D. Cal. Dec. 29, 2014), *aff'd*, 678 F. App'x 536 (9th Cir. 2017) (cleaned up).  The Court therefore considers these adverse employment actions only in connection with Hall's failure to accommodate claims.

The sixth adverse action Hall alleges is her exclusion from team meetings.  ECF No. 135 at 23.  Hall claims she was excluded from meetings regarding the Equitable AI Research Roundtable (EARR).  In support of her argument that she was excluded from EARR meetings, Hall attaches a long set of screenshots of meeting invitations that she apparently was not invited to.  ECF No. 135-2 at 341–358.[4]  Google argues that exclusion from EARR meetings cannot be considered

---

[4] The exhibit inexplicably also includes unauthenticated excerpts of emails and interrogatories that are apparently unrelated.

United States District Court
Northern District of California

adverse actions as these meetings were never part of her job duties, and that she was simply invited one meeting during onboarding. ECF No. 137 at 19; ECF No. 127-2 ¶ 11. Exclusion from work-related meetings can be an adverse employment action. *See Conwright v. City of Oakland*, No. C09–2572 THE, 2012 WL 174843, *at 8 (N.D. Cal. Jan. 20, 2012) (citing *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 869 (9th Cir.1996)). However, courts have found that plaintiffs must show that the exclusion from meetings results in "significantly diminished material responsibilities" or other adverse employment consequences. *Conwright*, , 2012 WL 1945494, at *4; *Hutchinson v. Seagate Tech., LLC*, No. C 02-05763 JF, 2004 WL 1753391, at *9 (N.D. Cal. Aug. 3, 2004), *aff'd sub nom. Hutchinson v. Seagate Tech.,* 147 F. App'x 647 (9th Cir. 2005). Hall has not shown that she suffered such consequences or even that such meetings were part of her job.[5] Therefore, the Court finds that Hall has not established that her exclusion from meetings was an adverse employment action.

The eighth adverse action that Hall alleges is her negative performance reviews. ECF No. 135 at 23. Hall claims that all the performance ratings she received from Smith-Loud prior to her termination were adverse employment actions. While "[u]ndeserved performance ratings can constitute an adverse employment action," "mere criticism of performance, without more, does not constitute an adverse employment action." *Hutchinson*, No. C 02-05763 JF, 2004 WL 1753391, at *9 (first citing *Yartzoff v. Thomas,* 809 F.2d 1371, 1375 (9th Cir. 1987); then *Kortan v. California Youth Auth.,* 217 F.3d 1104, 1113 (9th Cir. 2000)). Other than her eventual termination, which Hall has disclaimed as an adverse employment action as it pertains to her discrimination claims (ECF No. 100 at 2), none of the reviews were accompanied by any employment consequences. Accordingly, these reviews cannot be characterized as adverse employment actions. *See Lyons v. England*, 307 F.3d 1092, 1108, 1118 (9th Cir. 2002) ("[Plaintiff] does not allege [his employer]

---

[5] Hall also references two text messages—one "showing coworkers discussing Hall as if she was not present" and the other, sent mistakenly just before she was fired, in which Smith-Loud discussed coordinating her termination meeting and exit paperwork. ECF No. 135 at 24. These acts do not constitute adverse employment actions. *Strother*, 79 F.3d at 869 ("mere ostracism in the workplace is not enough to show an adverse employment decision."). "'[S]nide remarks' and 'increased criticism' are not adverse employment actions." *Conwright*, No. C09-2572 TEH, 2012 WL 174843, at *8 (citing *Hardage v. CBS Broad., Inc.,* 427 F.3d 1177, 1189 (9th Cir. 2005).

United States District Court
Northern District of California

has either relied upon the [ ] evaluations in making a further employment decision adverse to [plaintiff] or published these evaluations by making them available to other potential employers . . . [nor does plaintiff] allege that his mediocre evaluations were accompanied by any meaningful change in work assignments, either in the form of relieving him of responsibilities or saddling him with additional, burdensome tasks.").

Further, Hall received reviews that suggested that she consistently met expectations or that she had a moderate impact and partially delivered on her expectations. ECF No. 127 at 17. Her one review suggesting that she needed improvement was modified upwards prior to finalization. *Id*. Courts have found that reviews that suggest that an employee's performance is marginal or satisfactory do not constitute adverse employment actions. *Nguyen v. McDonough*, No. 23-cv-5790-DGE, 2025 WL 961638, at *7 (W.D. Wash. Mar. 31, 2025). Therefore, the Court finds that Hall's employment reviews by themselves do not constitute adverse employment actions.[6]

In sum, the Court finds that the only adverse employment action for which Hall can establish a prima facie case of disability discrimination for is the failure to promote claim.

### b.    Non-Discriminatory Reasons for Failure to Promote and Proof that Evidence is Pretextual

Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to establish that the adverse employment action was taken for some "legitimate, nondiscriminatory reason." *Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317, 324 (2017). On the failure to promote claim, Google argues that Hall was unqualified for a promotion and that her performance was unsatisfactory. ECF No. 127 at 24 (citing ECF No. 127-2 ¶¶ 41–42; ECF No. 127-5 ¶¶ 10–11; ECF No. 127-7 ¶ 7); *see also* ECF No. 127-3 ¶ 9. Google presents evidence of Hall's performance and behavioral issues that it contends contributed to her lack of advancement as well. ECF No. 127 at 17–19; ECF No 127-6 ¶¶ 28(a), 28(c) (detailing coworker complaints

---

[6] Even if these performance reviews were adverse actions, Google has met its burden to articulate a non-discriminatory reason to show that these performance ratings were based on actual performance deficiencies. ECF No. 127 at 27 (citing ECF No. 127-2 ¶¶ 27–50; ECF No. 127-3 ¶¶ 8–11, 14, 16; ECF No. 127-4 ¶¶ 3–14). Hall has not shown that Google's reasons were pretextual, pointing only to a "peer-based" award for her work in an employee resource group and being highlighted by Google in a social media post as evidence that she was also performing competently in her actual work duties as a research analyst. ECF No. 132-2 at 363, 365.

United States District Court
Northern District of California

about Hall's behavior from when she was in her content moderator role, in her research analyst role, and with members of the Disability Alliance Employee Resource Group); ECF No. 127-2 ¶ 28 (detailing complaints about interpersonal issues, performance issues, and insubordination starting in November 2021); ECF No. 127-3 ¶ 10 (detailing insubordination issues where Hall refused to meet with Smith-Loud and her second-level manager, Saška Mojsilović); ECF No. 127-4 ¶ 8 (same); ECF No. 135-7 ¶ 49 (Hall's declaration noting that Smith-Loud was documenting her purported performance deficiencies). Google also relies on the fact that Hall had never nominated herself. Hall Dep. at 338:31–339:7. Defendants therefore offer a legitimate, nondiscriminatory reason for its decisions: Hall was unqualified and underperforming at her job which did not entitle her to a promotion that she did not seek.

Once the defendant has provided nondiscriminatory reasoning for failing to promote, it is the plaintiff's burden to establish that the reasoning is pretextual. *Dominguez–Curry v. Nevada Transp. Dep't,* 424 F.3d 1027, 1037 (9th Cir. 2005) (citing *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1282 (9th Cir. 2000)). "The plaintiff may show pretext either (1) by showing that unlawful discrimination more likely motivated the employer, or (2) by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable." *Id.* at 1037 (citing *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1220–22 (9th Cir. 1998)). If the proffered reason is non-discriminatory, the employer's "true reasons need not necessarily have been wise or correct" as long as they did not act "with a motive to discriminate illegally." *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 358 (2000) (emphasis omitted). "In order to counter evidence that the defendant's employment decision was nondiscriminatory, the plaintiff must produce 'specific, substantial evidence of pretext.'" *Houston v. Regents of Univ. of California*, No. C 04-4443 PJH, 2006 WL 1141238, at *24 (N.D. Cal. May 1, 2006) (citing *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 890 (9th Cir. 1994)).

Hall provides no evidence that Google's explanation for failing to promote her was pretextual or was motivated by discriminatory animus. Hall argues that Google's assertions regarding her underperformance are newly created, and that Google revised one of her performance upwards demonstrates that Google's reasons are pretextual. ECF No. 125 at 25

(citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000)).  But the performance reviews in the record are contemporaneous, and Hall does not challenge the substance of those reviews or rebut the criticisms of her performance.[7]  That Google increased her performance review on one occasion from the lowest to the second lowest rating before finalization also does not undermine Google's nondiscriminatory explanation.  ECF No. 137 at 17.  This is not evidence that "that the employer is dissembling [the explanation] to cover up a discriminatory purpose." *Reeves*, 540 U.S. at 147.

Hall also claims that her peers were treated more favorably, while she remained an L2 employee for the entirety of her career.  ECF No. 135 at 25–26.  Hall's disparate impact claim is supported by evidence that suggests that employees are promoted after a few years in the L2 position.  ECF No. 135-2 at 264, 269.  In a disparate treatment case, however, the plaintiff must show that intentional discrimination was the determinative factor in an adverse employment action.  *Houston*, No. C 04-4443 PJH, 2006 WL 1141238, at *21 (citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993)).  Hall fails to dispute the evidence that Google puts forth that Hall's underperformance, failure to follow instructions, and poor interpersonal relationships with colleagues were the reason for her failure to advance.  While Hall may believe that she was performing competently and was entitled to a promotion, "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact." *Stegall v. Citadel Broadcasting Co.,* 350 F.3d 1061, 1066 (9th Cir. 2004).[8]  Hall has not established that Google's nondiscriminatory reasons for failing to promote her were pretextual.

### c.   Conclusion

For the reasons set forth above, the Court finds no dispute of material fact regarding Hall's

---

[7] Hall does claim that any deficiencies in her performance result from Google's failure to accommodate her disability.  ECF No. 135 at 24–25.  The Court discusses Hall's failure to accommodate claim *infra*.

[8] Hall also attaches screenshots of some Google employees' LinkedIn announcements that they were at one point promoted and says that these non-disabled peer employees who received favorable treatment.  ECF No. 135 at 178–182.  There is no evidence showing that these employees were treated more favorably in comparison because there is no evidence about whether these individuals were in the same role as Hall before their promotions or how many years in the same role they were promoted after. *Id*.  There is no evidence that she was disparately impacted by her disability in not being promoted.

United States District Court
Northern District of California

ADA and FEHA disability discrimination claims.  The Court will grant summary judgment to Google on these claims and deny Hall's motion for summary judgment on the same claims.

### 3.   Claim 8 and Claim 11: Race Discrimination Under Cal. Gov't Code § 12940(a) and 42 U.S.C. § 1981

Hall alleges that Google discriminated against her on the basis of her race, arguing that Google's refusal to promote, train, offer sufficient interpretive services, and sanctioning offensive remarks about her race was a violation of Cal. Gov. Code § 12940(a) and 42 U.S.C. § 1981.  ECF No. 118 at 108–115; 140–147.  Google moves for summary judgment on both claims.

Similar to disability discrimination claims, the plaintiff first bears the burden of proving her prima facie case of racial discrimination.  *See Chuang v. Univ. of Cal. Davis*, *Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  "To establish a prima facie case, a plaintiff must offer evidence that gives rise to an inference of unlawful discrimination."  *Cordova v. State Farms Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (internal quotation marks, alterations and citation omitted).  "The prima facie case may be based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas*, or by more direct evidence of discriminatory intent."  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).  Under the *McDonnell Douglas* framework, a plaintiff may make out a prima facia case by showing: (1) they belong to a protected class; (2) they were qualified to do the job; (3) they were subject to an adverse employment action; and (4) the employer treated similarly situated employees outside of the plaintiff's class more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.  *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004).  If the plaintiff makes out a prima facie case, the burden shifts to the employer to produce evidence of "a legitimate, nondiscriminatory reason" for the adverse employment action.  *Bergene v. Salt River Project Agric. Imp. & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001).  If the employer satisfies that burden, then the burden shifts back to the plaintiff to show that the "proffered reason was a pretext for the discrimination."  *Id.*

Google argues that it is  entitled to summary judgment on Hall's racial discrimination

claim as she cannot establish a prima facie case of discrimination.  ECF No. 127 at 25.  Google also argues in reply that Hall has waived her race discrimination claims by failing to make any argument regarding those claims in her brief.  ECF No. 137 at 15.

In fact, Hall makes no arguments regarding her Section 1981 or FEHA racial discrimination claims other than to claim that the Section 1981 claims are not time-barred.  ECF No. 135 at 15.  In *Kroeger v. Vertex Aerospace LLC*, the court found that the plaintiff had waived his arguments on a claim where he addressed only whether a claim was preempted but not defendant's substantive arguments about the claim itself.  No. CV 20-3030-JFW(AGRx), 2020 WL 3546086, at *8 (C.D. Cal. Jun. 30, 2020).  Similarly, by failing to oppose Google's argument that she cannot show a dispute of material fact regarding her racial discrimination claims, and addressing only whether the Section 1981 claim was within the statute of limitations, Hall has waived her race discrimination claims.  *See In re Online DVD Rental Antitrust Litig.*, No. M 09–2029 PJH, 2011 WL 5883772, at *12 (N.D. Cal. Nov. 23, 2011) (holding that failure to respond to argument on merits "viewed as grounds for waiver or concession of the argument").  Even on the merits, Hall cites no facts that either are direct evidence of, or could lead to an inference of, racial discrimination.

For the foregoing reasons, the Court finds that there is no material dispute of fact about whether Hall was subjected to discrimination on the basis of race.  The Court will therefore grant summary judgment to Google on Hall's § 1981 and FEHA race discrimination claims.

**4.      Claim 2 and Claim 6: Failure to Accommodate Under Cal. Gov't C. § 12940(m)(1) and 42 U.S.C. § 12101**

Hall brings claims of failure to accommodate under the FEHA and the ADA for a multitude of alleged failures to provide accommodations for her disability.  California Government Code § 12940(m) prohibits an employer from "fail[ing] to make reasonable accommodation for the known physical or mental disability of an applicant or employee."  The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability" where discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual

United States District Court
Northern District of California

with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.  42 U.S.C. § 12112(a)–(b).  As with disability discrimination, courts analyze federal law in applying California employment discrimination statutes and therefore conduct a conjoint analysis for failure to accommodate.  *Guz v. Bechtel Nat., Inc.*, 24 Cal.4th 317, 354 (2000).

"An employer or other covered entity has an affirmative duty to make reasonable accommodation(s) for the disability of any individual applicant or employee if the employer or other covered entity knows of the disability, unless the employer or other covered entity can demonstrate, after engaging in the interactive process, that the accommodation would impose an undue hardship."  Cal. Code Reg., tit. 2 § 11068(a).  Where a necessary accommodation is obvious, where the employee requests a specific and available reasonable accommodation that the employer fails to provide, or where an employer participates in a good faith interactive process and identifies a reasonable accommodation but fails to provide it, a plaintiff may sue under section 12940(m)."  *Nadaf–Rahrov v. Neiman Marcus Group, Inc.,* 166 Cal. App. 4th 952 (2008).

The elements of a reasonable accommodation claim are similar to the elements of a disability discrimination claim, but "there are important differences."  *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 256 (2000).  To establish a reasonable accommodation claim, an employee must show that (1) the employee has a disability under FEHA, (2) the employee is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the employee's disability.  *Scotch v. Art Institute of California Orange County, Inc.,* 173 Cal.App.4th 986, 1009–10 (2009).  "FEHA does not obligate an employer to choose the best accommodation or the specific accommodation a disabled employee or applicant seeks," only a "reasonable" one.  *Raine v. City of Burbank*, 135 Cal. App. 4th 1215, 1222 (2006).  "California courts have adopted the Equal Employment Opportunity Commission's interpretative guidance on the ADA, in which a reasonable accommodation means 'a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.'"  *Gardner v. Fed. Express Corp.*, 114 F. Supp. 3d 889, 901 (N.D. Cal. 2015) (citing

26

*Scotch*, 173 Cal. App. 4th 986 (2009)). "Although the question of reasonable accommodation is ordinarily a question of fact, when the undisputed evidence leads to only one conclusion as to the reasonableness of the accommodation sought, summary judgment is proper." *Raine*, 135 Cal. App. 4th at 1227 n.11. "In both discrimination and reasonable accommodation claims, the employee must establish that she suffers from a disability covered by FEHA or ADA and that she is a 'qualified individual.' However, for purposes of a reasonable accommodation claim, the third element— "that an 'adverse employment action' was caused by the employee's disability— is irrelevant. Under the express provisions of the FEHA, 'the employer's failure to reasonably accommodate a disabled individual is a violation of the statute in and of itself.'" *Jensen*, 85 Cal. App. 4th at 256. *See also King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 442 (2007) (noting an employer's failure to provide reasonable accommodation is a violation of FEHA, even in the absence of an adverse employment action).

Hall claims several failures of accommodation. Hall first lists several instances during training for her first role as a content moderator where Google provided no or insufficient interpreter access during training and onboarding, including instances during training where an unqualified colleague had to interpret for her. ECF No. 135-7 ¶¶ 10–19. Hall also alleges insufficient access to interpreters throughout her time in content moderation and claims that Google's captioning software they provided as an alternative was insufficient. *Id*. ¶¶ 21–26. Hall alleges that she was provided an insufficient accommodation by Google when a member of Google's HR suggested that she skip videos she could not process without sound or interpretation. *Id*. ¶ 25. After her transfer to the Research Analyst position, Hall alleges that her access to interpreters was reduced because she only could use them when she had meetings. *Id*. ¶ 41. Hall also claims that Google failed to accommodate her by failing to hire an in-house interpreter and instead relying on non-specialized contract interpreters. ECF No. 135 at 10.

First, most of the failure to accommodate claims that Hall alleges preceded the relevant time-bar for both the ADA claims and the FEHA claims. As the Court previously noted, all of Hall's claims that predate her research analyst role occur prior to the ADA's time bar of December 13, 2022.

The only non-time barred failure of accommodation during her time as a content moderator with respect to her FEHA claims is a Google Human Resources representative's directive that Hall skip videos she could not process without interpreters. ECF No. 135 at 11. Hall argues that this directive "effectively excluded Hall from performing the very tasks she had been recruited to do." *Id.* Hall also claims that her performance was evaluated based on how many videos she viewed and resolved each day, rendering an accommodation that required her to skip videos ineffective. ECF No. 135-7 ¶ 20. Google responds that allowing Hall to skip videos was a reasonable accommodation, ECF No. 137 at 9; it is not clear that skipping videos would affect Hall's productivity, but in any event, her quota was reduced from the typical five hours of videos to three hours, ECF No. 126-5 ¶ 11; and simply because the accommodation was not one that Hall would have selected did not render the accommodation unreasonable, ECF No. 137 at 7 (citing *Raine*, 135 Cal. App. 4th at 1222); *id.* at 9. Google further asserts that Hall's preferred accommodation of interpreters in the building in her content moderator role was not possible due to security concerns. ECF No. 127 at 15; ECF No. 135-2 at 424. Google states that the confidential nature of the work precluded interpreters who were contractors. ECF No. 137 at 8. It also claims that requiring Google to hire a second employee to do Hall's work by hiring an in-house interpreter would be an unreasonable accommodation. *Id.* at 14 (citing *Zamudio v. City of Oakland*, No. C 07-05713 MHP, 2009 WL 1458203, at *6 n.3 (N.D. Cal. May 26, 2009), *aff'd*, 379 F. App'x 589 (9th Cir. 2010)).

The Court agrees that there is no question of material fact regarding this accommodation. Hall testified that this accommodation allowed her to perform her job duties successfully:

> Q. Okay. When you were in the content moderation role, you received performance reviews?
>
> A. Yes.
>
> Q. And were those positive?
>
> A. Yes.
>
> Q. Okay. And did anybody ever say to you, you know, "Jalon, you're not doing a good job because, you know, you're not reviewing enough videos," or, "You don't have an interpreter. We don't think you understand the content"?

A. No.

Q. Okay.

A. No.

Q. So you were able to do the job?

A. Oh, yes, yes.

Hall Dep. at 166:11–25. Hall's primary issue with this accommodation was that she wanted a different one:  for Google to hire an interpreter to assist her while she reviewed videos.

> A reasonable accommodation is when both parties have an interaction and the person who needs the accommodation is the one who decides. [Google] made a decision for me without consulting, so skipping the video was not an accommodation for me.

Hall Dep. at 220:10–14.  Hall misunderstands Google's duty of accommodation.  "[R]easonable accommodation means a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired."  *Miller v. Dep't of Corr. & Rehab.*, 105 Cal. App. 5th 261, 280 (2024) (quotations omitted).  Reducing or modifying the workload of an employee to allow them to perform the essential functions of their job is a common and reasonable accommodation.  *Bey v. U.S. Bank*, No. SACV 09-0822 DOC (MLGx), 2010 WL 11596165, at *9 (C.D. Cal. June 14, 2010) ("The employer is not obligated to choose the reasonable accommodation that the employee requests, nor is the employer obligated to choose the best accommodation . . . .  Reducing Plaintiff's accounts, thereby reducing her workload, was a reasonable accommodation.") (citations omitted); *Miller*, 105 Cal. App. 5th at 277.  Hall testified that she never received a bad review in her role as a content moderator, and that she was not criticized for doing fewer videos, which means that the accommodation was effective in permitting her perform the essential functions of her job.  Hall Dep. at 166:24–25, 166:11–15, 254:18–20.  Nor was Hall's preferred accommodation reasonable—requiring "an employer to provide a second employee to do an employee's job."  *Zamudio*, No. C 07-05713 MHP, 2009 WL 1458203, at *6 n.3.  Google "has the ultimate discretion to choose between effective accommodations, and may choose . . . the accommodation that is easier for it to provide."  *Houston*, No. C 04-4443 PJH, 2006 WL 1141238, at *29 (N.D. Cal. May 1, 2006).

29

Accordingly, the Court will grant summary judgment to Google as to whether, under the FEHA, Google failed to provide reasonable accommodations by asserting that Hall "skip" videos that she could not process without sound.

Hall identifies other alleged instances of failure to accommodate. First is Google's use of untrained coworkers instead of qualified ASL interpreters to interpret meetings and training sessions. ECF No. 135 at 17. These incidents are time-barred as they occurred during her training as a content moderator specialist in 2020. ECF No. 135 at 9. They also are not supported by admissible evidence, because the Hayden declaration has been excluded.[9]

Hall next claims that Google delegated its duty to accommodate by outsourcing its legal obligation to a third-party vendor, and that the interpreters Google provided through the third-party were "unqualified." ECF No. 132 at 17. This new claim alleges ADA and FEHA violations that go beyond the allegations in her complaint, which referenced only insufficient access to a sign language interpreter. ECF No. 118 ¶¶ 18, 19, 20, 28. For that reason alone, Google is entitled to judgment on these claims. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (plaintiff cannot raise new factual allegations at summary judgment). Further, Hall testified that she was able to do her job well with the contract interpreters that she was provided with. Hall Dep. at 253:25–254:23. "To be reasonable, an accommodation must enable the employee to perform the duties of his position." *Haddock v. Lucent Techs., Inc.*, No. 07-CV-801-BR, 2008 WL 4133573, at *10 (D. Or. Aug. 29, 2008). The accommodations provided to Hall did that. Finally, as the Court noted previously, the employer has the discretion to choose between effective accommodations. *Wilson v. County of Orange*, 169 Cal. App. 4th 1185, 1194 (2009). Hall has not shown a dispute of material fact regarding the reasonableness of Google's interpreter accommodation.

Hall also claims that Google failed to accommodate her in her research analyst role by only "retaining" an interpreter when Hall had a meeting, that she was not invited to some meetings, and

---

[9] Plaintiff's brief also cites to Hall's declaration without providing a page citation, but that declaration does not support this argument. *See* ECF No. 135 at 17 (citing "#Hayden Decl.; #Hall Decl.").

United States District Court
Northern District of California

that interpreters were excluded from her meetings. ECF No. 135-3 at 14, 20. The only evidence Hall provides for these allegations is a compendium of screenshots of calendar invites for meetings between other persons and Smith-Loud. ECF No. 135-2 at 341–352. First, the evidence offers no support for the failure to accommodate claim about interpreter access, it simply appears to be a collection of meetings to which Hall was not invited. *Id.* Second, Hall does not provide any evidence to dispute Google's evidence that she was only invited to one occurrence of this routine meeting as part of her onboarding. ECF No. 127-2 ¶ 11. Third, Hall cannot have suffered injury by the absence of an interpreter from a meeting to which she was not invited. Finally, as previously noted, Hall testified that she was able to do her job with the interpreters she was provided. Hall Dep. at 253:25–254:3, 316:19–21.[10] As Hall testified that she was able to do her job as a research analyst with the full-time interpreters and other accommodations she was provided, there appears to be no material dispute that Google failed to accommodate Hall.

Finding no dispute of material fact, the Court will grant Google's motion for summary judgment and deny Hall's motion for summary judgment on Hall's failure to accommodate claims.

### 5.    Claim 3: Failure to Engage in An Interactive Process Under Cal. Gov't Code § 12940(n)

Hall claims Google failed in the interactive process claim because Google failed to explore alternatives to providing contract interpreters, including in-house interpreters, and denied Hall's specific requests without explanation providing accommodations it "knew" were ineffective. ECF No. 135 at 20. FEHA prohibits an employer from "fail[ing] to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov. Code § 12940(n).

"The interactive process requires communication and good-faith exploration of possible

---

[10] Hall's brief asserts that she was eventually only "permitted an interpreter for contentious one-on-one meetings with her manager," but there is no evidentiary support for this contention.

31

United States District Court
Northern District of California

accommodations between employers and individual employees with the goal of identifying an accommodation that allows the employee to perform the job effectively.  For the process to work both sides must communicate directly, exchange essential information and neither side can delay or obstruct the process." *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 984–85 (2008) (internal quotation and alterations omitted).  "[T]he fact that an employer took some steps to work with an employee to identify reasonable accommodations does not absolve the employer of liability under section 12940(n).  If the employer is responsible for a later breakdown in the process, it may be held liable." *Id.*

"Federal courts applying the ADA have held that an employer may be held liable for failing to engage in the good faith interactive process only if a reasonable accommodation was available, and that the employee bears the burden of proof on this issue." *Nadaf-Rahrov*, 166 Cal. App. 4th at 979; *see also Scotch v. Art Inst. of California-Orange Cnty., Inc.*, 173 Cal. App. 4th 986, 1018 (2009) ("To prevail on a claim under section 12940, subdivision (n) for failure to engage in the interactive process, an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred").  "Once the parties have engaged in the litigation process, to prevail, the employee must be able to identify an available accommodation the interactive process should have produced." *Chisholm v. 7-Eleven, Inc.*, 383 F. Supp. 3d 1032, 1058 (S.D. Cal. 2019) (quoting *Scotch*, 173 Cal. App. 4th at 1019 (2009)).

First, both parties provide extensive documentation showing Hall's requests for accommodation and Google's accessibility team meeting with Hall repeatedly to address those requests.  Hall Dep. at 127:5–7, 130:5–8; ECF No. 126-6 ¶¶ 10–18 (detailing many requests that Hall made and Google's communication with regarding each of the accommodations); ECF No. 127-5 ¶ 6 (detailing efforts by Google to gather information and recommendations regarding Hall's accommodations in order to provide additional accommodations such as meeting recaps and provision of agendas prior to meeting).  Google submits unrebutted evidence that "Hall never complained [to Google] that she could not perform the essential functions of her job due to lack of accommodation" and that "she never requested or identified an accommodation that was necessary

for her to complete her work and that was not given to her." ECF No. 127-5 ¶ 7. While Hall claims that "evidence abounds" of Google's failure to engage in the interactive process, she testified that Google met with her repeatedly to analyze various alternatives for her needs. Hall Dep. at 395:17–396:1. Further, even after Hall ceased responding to Google's ongoing attempts to accommodate her needs in her role as a research analyst, Google made repeated attempts to address her needs and requests. ECF No. 127-6 ¶¶ 14, 16, 18, 20.

Further, Hall fails to identify an accommodation that the interactive process should have identified. *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, No. C 07-3747 PJH, 2008 WL 5157710, at *14 (N.D. Cal. Dec. 8, 2008), *aff'd*, 642 F.3d 728 (9th Cir. 2011) ("To prevail in this claim, a plaintiff has the burden of showing that a reasonable accommodation was available."). Hall alleges that Google failed to meet her demands of an in-house interpreter and failed to engage in an interactive process on this request with her. ECF No. 135 at 19. However, she provides no evidence that she requested this accommodation and therefore cannot identify any available accommodation that should have been procured as a result of the interactive process. "It is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one. If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." *Id.* (citation modified). Finally, there is no evidence that Google failed to engage in the interactive process with Hall or denied any accommodation requests without providing an alternative in response to her complaints.

Because no reasonable jury could conclude that Google failed to engage in an interactive process with Hall, the Court grants Google's summary judgment motion with respect to Hall's interactive process claim.

### 6.    Claim 4: Harassment Under Cal. Gov't Code § 12940(j)

Hall next alleges that Google and Smith-Loud are liable for harassment under Cal. Gov't Code § 12940(j)(1) based on withdrawing critical communication access and reassigning Hall to a "dead-end" role following her complaint. ECF No. 135 at 27. Hall claims that she was subjected to a hostile work environment due to a "pattern of exclusion" and actions reflecting hostility

33

towards Hall.  *Id*. at 29.

"FEHA prohibits harassment of an employee."  *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013); *see also* Cal. Gov't Code § 12940(j).  To prove harassment, a plaintiff must demonstrate that "(1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment."  *Lawler*, 704 F.3d at 1244.  "Harassment cannot be occasional, isolated, sporadic, or trivial; rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature."  *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal.4th 121, 131 (1999).  FEHA harassment claims are not meant to enforce a general civility code in the workplace.  *Lyle v. Warner Bros. Television Prods.*, 38 Cal.4th 264, 295 (2006).  Instead, hostile conduct must be based on the plaintiff's protected status.  *Nichols v. Azteca Res. Enters., Inc.,* 256 F.3d 864, 871–72 (9th Cir. 2001).

The record before the Court lacks evidence that Google or Smith-Loud harassed Plaintiff because of her disability or race.  First, as previously noted, Hall's allegations that her reassignment was harassment fail as the evidence shows that she initiated the transfer.  ECF No. 135-2 at 410.  Hall also claims that she was harassed because she was subjected to managerial acts that had the "secondary effect of communicating a hostile message" such as Smith-Loud dismissing her concerns, interrupting her interpreters, ignoring her contributions, speaking to Hall about her legal case, and demanding access to her notes.  ECF No. 135 at 29 (citing *Roby v. McKesson*, 47 Cal.4th 686, 709 (2009)).

"FEHA does not protect employees from harassment or discrimination based merely on personality conflicts, snubbing by supervisors and co-workers, or simple lack of good manners."  *Shanks v. Lab'ys*, No. 5:15-CV-01151-EJD, 2016 WL 3940923, at *8 (N.D. Cal. July 21, 2016) (citation omitted).  The incidents Hall describes were "occasional, sporadic, isolated, or trivial,"  so as to not present a claim for harassment under the FEHA.  *Hughes v. Pair*, 46 Cal.4th 1035, 1044 (2009).  There are also no facts in the record suggesting that the alleged harassment was on the basis on her protected status.  *Cozzi v. Cnty. of Marin*, 787 F. Supp. 2d 1047, 1070 (N.D. Cal. 2011) ("the alleged hostile conduct [for an FEHA claim] must be based on the

34

plaintiff's protected status.").

Hall "has not provided evidence sufficient to raise a triable issue as to whether she was subjected to verbal or physical conduct of an [disability or gender]-related nature, or that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Cozzi*, 787 F. Supp. 2d at 1070.  The Court will grant summary judgment to Defendants on Hall's FEHA harassment claim.

### 7. Claim 7 and Claim 9: Retaliation and Interference with the ADA Under 42 U.S.C. § 12203 and Retaliation Under Cal. Gov't Code § 12940(h), (m)(2)

Hall alleges that Google retaliated against her in violation of the ADA, FEHA, and § 1981 for engaging in protected activity.  ECF No. 118 at 19.[11]  Hall asserts generally that Google subjected her to a "cascade of escalating adverse actions" culminating in her termination.[12]  ECF No. 135 at 27.

"In order to establish a prima facie case of retaliation, [Hall] must demonstrate that (1) she had engaged in protected activity; (2) she was thereafter subjected by her employer to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action." *Porter v. California Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005) (citation omitted).  "If [Hall] provides sufficient evidence to show a prima facie case of retaliation, the burden then shifts to [Google] to articulate a legitimate, non-retaliatory reason for its actions. If [Google] sets forth such a reason, [Hall] bears the ultimate burden of submitting evidence indicating that [Google's] proffered reason is merely a pretext for a retaliatory motive." *Id.* (citation omitted).  The same analysis applies under the ADA and § 1981.  *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009) (ADA); *Surrel v. Cal. Water Serv. Co.*, 518 F.3d, 1097, 1103, 1105 (9th Cir. 2008).  "Under FEHA, a protected activity involves opposing

---

[11] Hall claims that she is bringing retaliation claims not "only under the FEHA but also under 42 U.S.C. § 12203 and § 1981" and accuses Google of having waived its arguments on the remaining claims by failing to address them in the motion for summary judgement.  ECF No. 135 at 26. Google responds that retaliation claims under FEHA, the ADA, and § 1981 utilize identical analysis.  ECF No. 127 25–26.  The Court finds no waiver by Google.

[12] As noted before, the reassignments that Hall alleges were in retaliation for her protected conduct were initiated by her and therefore were not retaliatory.

harassment or other discrimination believed to be unlawful under FEHA; and filing a complaint, testifying, assisting, or participating in a FEHA investigation or proceeding." *Solomon v. J.B. Hunt Logistics, Inc.*, No. EDCV1402201RGKSPX, 2015 WL 13916284, at *5 (C.D. Cal. Oct. 7, 2015) (citing *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 380 (2015)). "In other words, to be protected, the activity must demonstrate some degree of opposition to, or protest of, unlawful conduct by the employer." *Id.* (citing *Nealy*, 234 Cal. App. 4th at 381). The Supreme Court has stated that the causal link between the protected activity and the employer's retaliatory action "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Here, Hall does not identify the protected activity supporting this claim in the relevant section of her brief, but the Court assumes that she relies upon her requests for accommodation to Google; her filing of an EEOC complaint; and her filing of this lawsuit. Nonetheless, Hall fails to demonstrate a causal connection between this protected activity and the various actions she alleges were retaliatory. ECF No. 127 at 26. "To establish causation, the plaintiff must show by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the adverse employment decision and that but for such activity the decision would not have been made." *McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1279 (E.D. Cal. 2012). "Temporal proximity, by itself, is not sufficient to establish a retaliatory motive." *Arevalo v. Chipotle Servs., LLC*, No. 214CV06652CASPJW, 2015 WL 12765020, at *9 (C.D. Cal. Nov. 9, 2015).

With regard to her termination specifically, Google provides evidence that Hall's performance issues began as early as 2021 and persisted until her termination in 2024. ECF No. 127 at 27; ECF No. 127-2 ¶¶ 27–50; ECF No. 127-3 ¶¶ 8–11, 13, 14; ECF No. 127-4 ¶¶ 3–14. Hall had ongoing performance issues that far preceded her complaints. As early as June 2021, Hall's peers and colleagues submitted complaints about her behavior. ECF No. 127-5 ¶¶ 28(a)–(c). Smith-Loud noted issues with Hall's performance and interpersonal skills as early as November 2021. ECF No 127-2 ¶ 27;  ECF No. 127-3 ¶ 8. Hall was repeatedly provided with feedback beginning in 2022 about her areas for improvement on her writing and research projects

that she apparently ignored.  ECF No. 127-2 at 25–26 (email in December 2022 with Smith-Loud specifying deficiencies in Hall's work with feedback for improvement); ECF No. 127-2 at 39–43 (email in January 2023 with Smith-Loud providing constructive feedback on Hall's work); ECF No. 127-2 at 54–55 (email in September 2024 with critical feedback from Smith-Loud on Hall's ongoing research project).  Other managers who were directly involved in the decision to terminate Hall also noted years of performance issues such as false citations, insubordination, and failure to meet expectations.  ECF No. 127-3 ¶¶ 8, 9, 10, 14;  ECF No. 127-4 ¶¶ 4–5.  Hall provides no evidence that Google's proffered reason for her termination was pretextual.  "The burden shifting analysis of *McDonnell Douglas* permits summary adjudication where a Plaintiff fails to present evidence that an employer's allegedly nondiscriminatory justification was pretextual."  *Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 704 F. Supp. 2d 859, 863 (N.D. Cal. 2010).

The Court finds that Hall cannot establish a prima facie case of retaliation under the ADA, FEHA, or § 1981, and will grant Google's motion on these claims.

### 8. Claim 10: Failure to Prevent Discrimination, Harassment & Retaliation Under Cal. Gov't Code § 12940(k)

As there is no material dispute as to Hall's discrimination, harassment or retaliation claims, Hall's failure to prevent claim fails as a matter of law.  *See Keshe v. CVS Pharmacy*, 711 F. App'x. 396, 397 (9th Cir. 2017) ("There is no FEHA claim for failure to prevent discrimination if no discrimination occurred.") (citing *Trujillo v. N. Cty. Transit Dist.*, 73 Cal. App. 4th 280, 288–89 (1998)).  Therefore, the Court will grant summary judgment to Google on the failure to prevent discrimination, harassment, and retaliation claim.

### 9. Punitive Damages

Google moves for summary judgment on Hall's demand for punitive damages.  ECF No. 127 at 30.  "An employer may be liable for punitive damages when "'the employer . . . ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice.'"  *CRST, Inc. v. Superior Court*, 11 Cal. App. 5th 1255, 1262 (2017) (quoting *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1148 (1998)).  For punitive damages under

United States District Court
Northern District of California

California law, a plaintiff must show that an officer, director, or managing agent of the company personally engaged in oppressive, fraudulent or malicious conduct towards her. *Rabara v. Heartland Emp. Servs., LLC*, No. 17-CV-03770-LHK, 2019 WL 1877351, at *25 (N.D. Cal. Apr. 26, 2019) (citing Cal. Civ. Code § 3294(b)).

As Hall's substantive claims do not survive summary judgment, the Court grants summary judgment on Hall's claim for punitive damages as well. *See Mauran v. Wal-Mart Stores, Inc.*, No. 2:16-CV-07808-RGK-JC, 2017 WL 11636674, at *10 (C.D. Cal. Sept. 22, 2017) (granting summary judgment on punitive damages when the Court granted summary judgment on the underlying discrimination claims).

## CONCLUSION

For the foregoing reasons, the Court partially grants Google's motion to strike, grants Google's motion for summary judgment, and denies Hall's motion for summary judgment. The Clerk shall enter judgment for Defendants Google and Smith-Loud.

**IT IS SO ORDERED.**

Dated: July 6, 2026

_____
JON S. TIGAR
United States District Judge

38